STATE of Wisconsin, Plaintiff-Respondent,

v.

George R. BOLLIG, Defendant-Appellant.†

Court of Appeals

*No. 98–2196–CR. Submitted on briefs December 4, 1998.—Decided January 28, 1999.*

(Also reported in 593 N.W.2d 67.)

†Petition to review granted.

623

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas E. Knothe* of *Collins, Quillin & Knothe, Ltd.,* of La Crosse.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *William C. Wolford,* assistant attorney general.

Before Dykman, P.J., Eich and Vergeront, JJ.

DYKMAN, P.J. George Bollig appeals from a judgment convicting him of attempted sexual contact with a child, contrary to §§ 939.32(1) and 948.02(1), STATS., and from an order denying his request to withdraw his no contest plea. Bollig contends that he should have been permitted to withdraw his plea because it was not knowingly, voluntarily and intelligently entered. We disagree and affirm.

## BACKGROUND

Bollig was initially charged with having sexual contact with a person under the age of thirteen, contrary to § 948.02(1), STATS., and a trial was scheduled for May 7, 1997. On the morning the trial was scheduled to begin, the court heard various pre-trial motions. After the trial court ruled on the motions, the State offered to charge Bollig with attempted sexual contact with a child under the age of thirteen, contrary to §§ 939.32(1) and 948.02(1), STATS., if he agreed to enter a plea of no contest. Bollig accepted the State's offer and signed a plea questionnaire and waiver of rights form. After a brief colloquy, the trial court

accepted Bollig's plea and scheduled a sentencing hearing and ordered a presentence investigation report.

Prior to sentencing, Bollig's attorney, Ronald Benavides, filed a motion to withdraw his client's no contest plea, asserting that it was not knowingly, voluntarily and intelligently entered. The motion stated that Bollig felt coerced on the day that he entered his plea, that he did not do the crime, and that he entered into the plea agreement so as to spare the child victim the trauma of having to testify. The trial court held a hearing and gave Bollig an opportunity to explain why he wanted to withdraw his plea. The trial court ultimately denied the motion and allowed Benavides to withdraw as counsel.

On August 19, 1997, the court appointed Attorney Todd Bennett to represent Bollig. Attorney Bennett filed another motion to withdraw Bollig's plea, but the trial court did not consider that motion because Bollig requested that the court release Bennett as his attorney. The trial court ordered a continuance until the public defender could decide whether to appoint another attorney to represent Bollig.

On October 17, 1997, Bollig filed a pro se motion to withdraw his no contest plea, but the court took no action on that motion. On October 22, 1997, the trial court appointed Attorney Thomas Croke to represent Bollig. On December 15, 1997, Attorney Croke filed a motion to withdraw his client's no contest plea because the trial court did not advise Bollig at the plea colloquy that as a result of his conviction: (1) he might be determined in the future to be a sexual predator under ch. 980, STATS.; and (2) he would be required to register as a convicted sex offender under § 301.45(1)(a), STATS., and if he failed to do so, he could be fined and/or imprisoned under § 301.45(6).

On December 18, 1997, the trial court held a hearing on this motion. After reviewing the evidence, the trial court denied the motion and sentenced Bollig to ten years in prison for attempted sexual contact with a child under the age of thirteen. Bollig now appeals.

## DISCUSSION

### 1. *Essential Elements*

Bollig contends that he should be permitted to withdraw his no contest plea because it was not knowingly, voluntarily and intelligently entered. The trial court is required to undertake a personal colloquy with the defendant at the plea hearing to assure that the defendant's plea is knowingly, voluntarily and intelligently made. *See* § 971.08(1), STATS. A plea of no contest that does not conform to this standard violates fundamental due process, and may be withdrawn as a matter of right. *See State v. Van Camp*, 213 Wis. 2d 131, 140, 569 N.W.2d 577, 582 (1997). On appellate review, the issue of whether the plea was knowingly, voluntarily and intelligently entered is a question of constitutional fact, which we review de novo. *See id.*

Under the procedure established by the supreme court in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), we employ a two-part process to determine whether a defendant knowingly, voluntarily and intelligently entered a plea of no contest. We must first determine: (1) whether the defendant has made a prima facia showing that his plea was accepted without the trial court's conformance with § 971.08, STATS.,[1]

---

[1] Section 971.08(1), STATS., in pertinent part, reads as follows:

and the other mandatory duties imposed by the supreme court; and (2) whether the defendant properly alleged that he or she did not know or understand the information that should have been provided at the plea hearing. *See id.* at 274, 389 N.W.2d at 26. If the defendant satisfies this requirement, the burden then shifts to the State to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily and intelligently entered, despite the inadequacy of the record at the time the plea was accepted. *See id.*

■

Bollig argues that the trial court did not comply with § 971.08(1)(a), STATS., because it did not inform him during the plea colloquy that the State had the burden of proving beyond a reasonable doubt that he attempted to engage in sexual contact with the victim for the purpose of sexually arousing or gratifying himself.[2] A plea is not voluntary if the defendant did not

---

Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

[2] The State contends that Bollig is not entitled to raise this issue on appeal. It asserts that this court lacks jurisdiction to review a denial of a postconviction motion if the motion was never reduced to a written order and never filed in the trial court. And while this is certainly true of postconviction motions, none of Bollig's motions to withdraw his plea were made after sentencing. Bollig filed his last motion to withdraw in December 1997, and the trial court issued a written order denying that motion on January 16, 1998. The trial court did not sentence Bollig until January 30, 1998. Thus, the conviction was not final until January 30, 1998. *See* RULE 809.30, STATS. Because all of

understand the essential elements of the charged offense at the time the plea was entered. *See Bangert*, 131 Wis. 2d at 267, 389 N.W.2d at 23. The essential elements of attempted sexual contact with a child under the age of thirteen are: (1) the defendant had sexual contact with the victim; (2) for the purpose of sexually arousing or gratifying the defendant or sexually degrading or humiliating the victim; and (3) the victim had not attained the age of thirteen years at the time of the alleged sexual contact. *See* WIS J I—CRIMINAL § 2103.

The following is the portion of the colloquy in which the trial court instructed Bollig on the essential elements of the underlying crime:

**Court**: All right. You understand also, sir, that the law is that the State of Wisconsin is required to prove your guilt beyond a reasonable doubt, you understand that?

**Bollig**: Yes I do.

**Court**: And that means the state would have to prove all of the elements of the offense beyond a reasonable doubt, I want to briefly outline the elements of the offense to you, elements of the offense of first degree sexual [assault] of a child are 2, first, that you had sexual contact, you would have had sexual contact with

---

Bollig's motions to withdraw were filed and decided prior to January 30, 1998, none of them constitute postconviction motions. All nonfinal rulings made before judgment is entered are considered to be part of the final judgment. *See* RULE 809.10(4), STATS. All oral or written rulings now at issue were filed before the judgment was entered, and therefore may be reviewed on appeal.

the child, secondly, that the child had not attained the age of 13 years at the time of the alleged contact, the allegation of the case that you did not actually commit the offense, but that you attempted to do so, so first the state would have to prove beyond a reasonable doubt that you intended to commit the crime of first degree sexual assault as outlined for you, secondly, that you did acts which demonstrated unequivocally under all circumstances that you intended to, would have committed the crime of sexual assault of a child, [except] for intervention of another person or some other factor. Now, sir, do you understand the elements of the offense of attempted sexual assault under age 13?

**Bollig:** Yes.

We conclude that the trial court's statement on essential elements did not comply with § 971.08(1)(a), STATS., because it did not instruct Bollig that his purpose or motive was an essential element of the crime. Bollig also alleges that he did not understand the rights he was waiving because the trial court failed to notify him of this essential element. Therefore, we are satisfied that he has made the requisite prima facie showing.

■

Once the defendant has made this initial showing, the burden shifts to the State to show by clear and convincing evidence that the plea was knowingly, voluntarily and intelligently entered, despite the inadequacy of the record at the time the plea was accepted. *See Bangert*, 131 Wis. 2d at 274, 389 N.W.2d

at 26. The State may utilize any evidence which substantiates that the plea was knowingly and voluntarily made. *See id.* In short, the State bears the burden of establishing that Bollig knew and understood that in order to convict him, the State needed to prove that he engaged in sexual contact with the minor for his own sexual gratification or arousal.

To meet its burden, the State begins by pointing out that Bollig signed a plea questionnaire and waiver of rights form in this case. We have held that plea questionnaires in and of themselves are competent evidence of a knowing and voluntary plea. *See State v. Moederndorfer,* 141 Wis. 2d 823, 827–29, 416 N.W.2d 627, 629–30 (Ct. App. 1987). Paragraph seven of this particular form states that if the case went to trial, the State would have to prove that Bollig attempted to engage in sexual contact with the child for the purpose of sexual gratification or arousal. Bollig's signature at the end of the plea questionnaire and waiver form establishes that he was aware that his sexual arousal or gratification was an element of the underlying charge.

We reject Bollig's assertion that his signature was coerced, and that he was confused when he entered into the plea. Our conclusion is based on the fact that he told the trial court upon entering the plea that he had enough time to review the plea questionnaire with his attorney, that there was nothing about it he did not understand, that was unclear to him or that needed explaining, and that there was nothing about the form that he wanted to discuss with his attorney.

To further bolster its case, the State points out that Bollig was present at the pretrial motion hearing in which the State sought to admit evidence of his prior

sexual assaults for the purpose of establishing that he had a history of assaulting minor girls to sexually arouse or gratify himself. Specifically, the State sought to admit evidence that Bollig: (1) sexually assaulted his three younger sisters as they were growing up; (2) pleaded guilty to third-degree sexual assault in 1982; and (3) allegedly exposed himself to a young child in 1993. The State argued that without this evidence, the jury would have difficulty in fully understanding Bollig's motive for assaulting young female children. Although the court ultimately denied the State's motion, Bollig's presence at this hearing strongly suggests that he was aware that in order to convict him, the State needed to prove his motive or purpose for engaging in sexual contact with a minor. We conclude that these two factors—the plea questionnaire and Bollig's presence at the pretrial motion hearing—are clear and convincing evidence that Bollig was aware of all the elements that the State needed to prove in order to convict him of the underlying crime.

## 2. *Direct and Collateral Consequences*

Bollig also asserts that his plea was not knowingly, voluntarily and intelligently entered because the trial court did not notify him that as a result of his conviction: (1) he may be determined in the future to be a sexual predator under ch. 980, STATS.; and (2) he would be required to register as a convicted sex offender under § 301.45(1)(a), STATS., and that if he failed to do so, he could be fined and/or imprisoned under § 301.45(6). Bollig asserts that the trial court's failure to instruct him on these punishments is a "fair and just" reason for allowing him to withdraw his plea, and that the trial court therefore erroneously exercised its discretion in denying his motion.

The trial court has discretion to decide whether to allow a defendant to withdraw a plea prior to sentencing. *See State v. Garcia*, 192 Wis. 2d 845, 861, 532 N.W.2d 111, 117 (1995). We will sustain the trial court's decision to deny Bollig's motion to withdraw his plea as long as the trial court did not erroneously exercise its discretion. *See id.* "A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). "Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Id.*

When a motion to withdraw a plea is made prior to sentencing, a defendant should be allowed to withdraw the plea if the defendant presents a "fair and just" reason. *See State v. Canedy*, 161 Wis. 2d 565, 582, 469 N.W.2d 163, 170 (1991). Any fair and just reason, including a genuine misunderstanding of the consequences of a plea, may justify withdrawal of the plea prior to sentencing, so long as the prosecution has not been substantially prejudiced by the reliance on the plea. *See State v. Shanks*, 152 Wis. 2d 284, 288–90, 448 N.W.2d 264, 266–67 (Ct. App. 1989). The burden is on the defendant to offer a fair and just reason. *See id.*

A plea that violates a defendant's due process rights, including the right to enter a knowing and voluntary plea after being informed of the criminal

penalties, is void and may be withdrawn. *See State v. Dugan*, 193 Wis. 2d 610, 618, 534 N.W.2d 897, 899–900 (Ct. App. 1995). When the trial court informs a defendant of his or her rights, it is required to notify him or her of the "direct consequences" to a voluntary and intelligent plea of no contest. *See State v. James*, 176 Wis. 2d 230, 238, 500 N.W.2d 345, 348 (Ct. App. 1993). A trial court, however, is not required to notify defendants of "collateral consequences" of such a plea. *See State v. Madison*, 120 Wis. 2d 150, 160–61, 353 N.W.2d 835, 841 (Ct. App. 1984). "[T]he distinction between 'direct' and collateral consequences of a plea . . . turns on whether the result represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment." *James*, 176 Wis. 2d at 238, 500 N.W.2d at 348 (quoting *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005 (1973)). "When the challenged consequence of the plea does not 'automatically flow' from the conviction, but rather will depend upon the defendant's condition at a future proceeding, the consequence is collateral." *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 616, 637, 579 N.W.2d 698, 708 (1998), *cert. denied, Warren v. Wisconsin*, 119 S. Ct. 413 (1998). Therefore, we review the consequences at issue and determine: (1) whether they are direct or collateral; and (2) whether they constitute "punishment." *See Dugan*, 193 Wis. 2d at 618, 534 N.W.2d at 900.

Bollig first contends that the trial court erred by not notifying him during their colloquy that as a result of his conviction in this matter, he might be found to be a sexual predator under ch. 980, STATS. In *State v. Myers*, 199 Wis. 2d 391, 544 N.W.2d 609 (Ct. App. 1996), we held that a commitment under ch. 980 is not

a direct consequence because it does not automatically flow from a sexual conviction. *See id.* at 394, 544 N.W.2d at 610. Rather, a commitment will depend on the defendant's "condition at the time of the ch. 980 proceeding and the evidence that the State will then present on his [or her] condition." *Id.* Furthermore, even if the State were to initiate these commitment proceedings, the defendant would have "the full benefit of the ch. 980 procedures, due process, and an independent trial, including the right to offer evidence to refute the State's charges." *Id.* at 394, 544 N.W.2d at 610–611. Therefore, we concluded that notification of possible ch. 980 proceedings need not be part of a plea colloquy in order to assure that a defendant's plea was knowing and voluntary. *See id.* at 394–95, 544 N.W.2d at 610–11.

Bollig also contends that the trial court erred in not notifying him during their colloquy that as a result of his conviction in this matter, he would be required to register as a convicted sex offender under § 301.45(1)(a), STATS., and that if he failed to register, he could be fined and/or imprisoned under § 301.45(6).

The fact that a defendant could be fined and/or imprisoned if he or she fails to register is another example of a collateral consequence. It is not a definite, immediate and automatic result of conviction because several intervening events first must occur in order for the penalty to be invoked.

However, the requirement that a convicted sex offender register with the appropriate agency appears, at least initially, to be a direct consequence of pleading no contest to attempted sexual contact with a child. *See* § 301.45, STATS. The question then becomes whether this registration requirement constitutes a punishment. The trial court concluded that it did not

constitute a punishment, and that Bollig therefore did not raise a "fair and just" reason for withdrawing his plea.[3]

The issue of whether this registration requirement under § 301.45, STATS., constitutes punishment or a direct consequence is a matter of first impression in Wisconsin. The supreme court recently concluded in *State v. Hezzie R.*, 219 Wis. 2d 849, 580 N.W.2d 660 (1998), *cert denied, Ryan D.L. v. Wisconsin,* — S. Ct. — (1999), a similar requirement does not constitute punishment for juvenile offenders. The reason given was that the Juvenile Justice Code expressly allows juvenile offenders to waive the requirement if certain criteria are met. *See id.* at 881–82, 580 N.W.2d at 671–72. However, there is no such waiver option for adult offenders. We therefore must look to other jurisdictions for guidance on whether this registration requirement constitutes a direct or collateral consequence and/or whether it constitutes "punishment."

Section 301.45, STATS., is our state equivalent to "Megan's Law," a law adopted by several states requir-

---

[3] The trial court stated:

Regarding the fact he . . . will be required to register as a sexual offender under 301.45 of the Wisconsin statute, in my humble opinion[,] does not establish a fair and just reason to allow him to withdraw his plea. First, I would point out that although argument can certainly be made to the contrary, I don't mean to suggest that there is not contrary view . . . on the matters raised in Mr. Croke's motion, in my view at least, registration is not punishment, only punishment if he fails to register. . . . Section 301.45 of the Wisconsin statute just requires Mr. Bollig to register, every male, I guess every person now who turns 18 has to register for the draft, seems to me requiring him to register [as a] sexual offender . . . does not rise to the level of fair and just reason. If it is [a] fair and just reason for the factors I cited earlier . . . I think that fair and just reason would be outweighed by the prejudice to the state and the victim in this particular case . . . .

ing all convicted sexual offenders to register with an appropriate governmental agency.[4] Arizona, Florida, Illinois, New Jersey, Pennsylvania, Texas, Washington, and Wyoming either do not view this duty to register as punishment or do not view it as a direct consequence; therefore, trial courts in these jurisdictions do not have a duty to inform the accused of this consequence prior to accepting his or her plea. *See State v. Young*, 542 P.2d 20 (Ariz. 1975); *Collie v. Florida*, 710 So. 2d 1000 (Fla. Ct. App. 1998), *rev. denied*, 722 So. 2d 192 (1998), *cert. denied*, 119 S. Ct. 624 (1998); *People v. Taylor*, 561 N.E.2d 393 (Ill. App. Ct. 1990); *Doe v. Poritz*, 662 A.2d 367 (N.J. 1995); *Commonwealth v. Gaffney*, 702 A.2d 565 (Pa. Super. Ct. 1997), *appeal granted in part*, 710 A.2d 605 (Pa. 1998); *In re B.G.M.*, 929 S.W.2d 604 (Tex. Ct. App. 1996); *State v. Ward*, 869 P.2d 1062 (Wash. 1994); *State v. Perkins*, 737 P.2d 250 (Wash. 1987); *Johnson v. State*, 922 P.2d 1384 (Wyo. 1996). On the other hand, California and North Dakota have held that registration is a direct consequence of the plea, and that the trial court is required to notify the defendant of this consequence prior to accepting his or her plea. *In re Birch*, 515 P.2d 12 (Cal. 1973); *but see People v. McClellan*, 862 P.2d 739 (Cal. 1993); *State v. Breiner*, 562 N.W.2d 565 (N.D. 1997). We elect to side with the majority and conclude that a trial court is not required to notify a defendant of this registration requirement in order for the plea to be

---

[4] In 1994, the New Jersey legislature passed "Megan's Law" in response to the sexual assault and murder of seven-year-old Megan Kanka by a twice-convicted sex offender who lived nearby. The law was enacted for the specific purpose of providing parents and others in the community with notice and fair warning of the presence of convicted sex offenders. *See Doe v. Poritz*, 662 A.2d 367 (N.J. 1995).

valid. We view this registration requirement as a safe-guard to protect past victims and the public in general, and not as a direct punishment.

However, as Bollig points out, our conclusion that these are not direct consequences does not answer the question of whether he offered a "fair and just" reason for moving to withdraw his plea. The standard for with-drawing a plea prior to sentencing is quite low. A fair and just reason "contemplates the mere showing of some adequate reason for the defendant's change of heart," *Shanks*, 152 Wis. 2d at 288, 448 N.W.2d at 266, but it must be more than a desire for a trial. *See Canedy*, 161 Wis. 2d at 583, 469 N.W.2d at 170–71. While this is a discretionary determination, the trial court is to take a liberal rather than a rigid view of the proffered reasons. *See Shanks,* 152 Wis. 2d at 288, 448 N.W.2d at 266.

The trial court held that even if Bollig's proffered reason was fair and just, it was outweighed by the prejudice to the State and the victim. To withdraw a plea, the defendant must offer a fair and just reason *and* prove that the State would not be substantially prejudiced by its reliance on the plea. *See Shanks*, 152 Wis. 2d at 288–90, 448 N.W.2d at 266–67. In this case, the trial court concluded that Bollig failed to establish the latter. It held as follows:

> Even if that were to be considered by the court to be fair and just reason, in this particular case I think the rights to the state and victim on the other hand outweigh any fair and just reason to allow Mr. Bol-lig to withdraw his plea at this late date in the proceedings. If I remember the record correctly, the offense allegedly occurred back in February of 1996,

and the event which we are talking about, the victim was born October 17, 1991, soon be 2 years since the event occurred, and one, that has been a long time hanging over the head of the victim, secondly, the victim is a child, long time to expect evidence and testimony recollections to remain fresh, so that any trial that would be held at this late date might not, would not be fair to the victim, would not be fair to the state.

Our review in this case is limited to determining whether the trial court erroneously exercised its discretion. We conclude that while the trial court was uncertain as to whether these consequences were a "fair and just reason," it was certain that withdrawal at this late stage would prejudice the State in its prosecution.

The attempted assault in this case occurred in late February 1996, when the victim was four years old. The trial was set to proceed on May 7, 1997, which was the same day that Bollig entered his plea of no contest. Sentencing was to occur soon thereafter, but it was delayed because of Bollig's repeated dissatisfaction with his appointed attorneys. These delays pushed sentencing back several months. Meanwhile, the victim has had time to forget the assault, as have any other witnesses, which makes prosecution more difficult. We therefore conclude that the trial court did not erroneously exercise its discretion by concluding that the delay would substantially prejudice the State in its prosecution, particularly in light of the nature of the crime. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed